UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MARINA LORRAINE WEESE,                         Case No. DT 09-09268
                                               Hon. Scott W. Dales
                                               Chapter 13

                Debtor.
_____/

**OPINION AND ORDER REGARDING**
**DEBTOR'S OBJECTION TO CLAIM OF OCWEN LOAN SERVICING, LLC**

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge


### I. INTRODUCTION AND JURISDICTION

This matter is before the court on the objection (DN 42, the "Objection") of Debtor Marina Lorraine Weese ("Ms. Weese" or the "Debtor") to the claim of Ocwen Loan Servicing, LLC ("Ocwen"). The court held an evidentiary hearing to consider the Objection on April 21, 2010 in Traverse City, Michigan. Ms. Weese, Ocwen, the United States Trustee, and the Chapter 13 Trustee appeared at the hearing. The court heard testimony from Ms. Weese and from Ocwen's senior loan analyst, Gina Johnson.

The court has jurisdiction over Ms. Weese's bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the Objection gives rise to a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). The matter is within the United States District Court's automatic reference under 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The following constitutes the court's

findings of fact and conclusions of law in accordance with Rule 52, made applicable in this contested matter by Rules 9014(c) and 7052.[1]

## II. EVIDENCE AND ANALYSIS

Ocwen's proof of claim ("Original Proof of Claim," Claim No. 10-1 on the court's claim register), is "prima facie evidence of the validity and amount the claim." Fed. R. Bankr. P. 3001(f).  At trial, the parties agreed that Ms. Weese had the burden of rebutting the presumptive validity of Ocwen's claim.  If the court was satisfied that she met this burden of going forward, then Ocwen would be required to prove its claim. *See* Fed. R. Evid. 301.

### A. Elements of Ocwen's Claim, Other Than Late Fees

Prior to the filing of the petition, Ms. Weese had considerable difficulty staying current on her mortgage obligations to Ocwen.  She testified that she had fallen behind in making payments sometime in 2006, and had entered into a forbearance arrangement with Ocwen, ultimately becoming current again, at least as far as she knew.  However, she conceded that she again fell behind in making mortgage payments. She agreed that, as of August 4, 2009 when she filed her voluntary petition in this case, she was again in default.  Nevertheless, she challenged Ocwen's calculation of the arrearage allocable to her prepetition default.

During Ms. Weese's testimony, the court admitted Debtor's Exhibit 1, Ocwen's Notice of Default dated May 19, 2009.  The court concluded that the disparity between the "TOTAL DUE" set forth in the Notice of Default ($13,954.40) and the "TOTAL ARREARAGES" reflected on the Original Proof of Claim ($34,496.06) raised enough doubt about the claim to rebut the

---

[1] Reference to any "Rule" in this opinion shall be to the federal civil, bankruptcy, or evidence rules, depending on the context and the numbering conventions of each set of rules.

presumption under Rule 3001(f), particularly because the documents were prepared within a few short months of each other. The court, therefore, required Ocwen to present its proofs.

In response, Ocwen offered documentary evidence in support of its claim, and the testimony of Gina Johnson, its senior loan analyst. Ms. Johnson explained that before becoming Ocwen's senior loan analyst, she was in charge of Ocwen's bankruptcy department, and had worked for Ocwen on delinquent home loans since 2005. She impressed the court as a forthright witness, fully-versed in her area of employment, and eminently capable in explaining her employer's procedures and documents offered in support of the claim. She responded succinctly and directly to questions posed by counsel and the court. The court credits her testimony.

The court appreciates why the Debtor and her counsel put Ocwen to its proofs: some of the documentary evidence of the amount of Ms. Weese's delinquency, at first glance, seemed inconsistent. The record established that the Debtor's monthly payment of principal and interest under her note, which was included as part of Exhibit H, is $1,076.94, yet at various times and in various documents, Ocwen claimed different amounts attributable to, among other things, missed payments of principal and interest. For example, in addition to the disparity between Debtor's Exhibit 1 and Ocwen's Original Proof of Claim, there is a difference between the amounts reported in the Original Proof of Claim and Ocwen's proposed amended proof of claim (the "Proposed Amended Proof of Claim").[2] The main difference between these two claims is the amount of the arrearage allocable to the Debtor's monthly payments: on the Original Proof of Claim, the monthly payment arrearage is reported at $7,520.60 and on the Proposed Amended Proof of Claim, it is reported at $6,461.64.

---

[2] Ocwen's counsel explained that its Proposed Amended Proof of Claim would be filed with the court shortly to supersede its original Proof of Claim. The court notes that on April 22, 2010, Ocwen filed an amended Proof of Claim, as predicted (Claim No. 15).

The primary exhibit supporting Ocwen's claim is the payment reconciliation history included as Exhibit C, which the court admitted, over Ms. Weese's limited objection, as a business record under Rule 804(5) (records of regularly conducted activity). Ms. Johnson walked the court through the significant entries on Exhibit C, which substantiated each of the components of the payment arrearage set forth in Ocwen's Proposed Amended Proof of Claim. In addition, the court considered, with Ms. Johnson's testimony, the detail of late fees, insufficient funds or "NSF" fees, a breakdown of Ms. Weese's escrow obligations, and the detail and supporting documentation for miscellaneous fees included as part of the arrearage.

The court credits Ms. Johnson's explanation of the disparity between the total due reflected on Debtor's Exhibit 1, the Notice of Default, and the total arrearage reflected on the itemization of Ocwen's Proofs of Claim. In general, Ms. Johnson explained that the purpose of the Notice of Default was to provide the amount of past due charges that Ms. Weese would have to pay in order to persuade Ocwen to reinstate the note. In other words, the Notice of Default was not intended as a payoff statement, but rather a reinstatement notice. So, for example, the Notice of Default did not include the entire escrow shortfall that the parties discussed at the hearing, but only the portion of the escrow shortfall that was included as part of the Debtor's monthly payment obligations. More specifically, the testimony established that Ms. Weese had not paid taxes on the collateral and had permitted insurance to lapse. As a result, Ocwen was constrained to advance funds for taxes and to "force-place" insurance. When Ocwen force-placed insurance it determined, contrary to Ms. Weese's understanding, that the collateral is located within a flood zone. Therefore, the Federal Emergency Management Agency guidelines called for more costly insurance than typically provided under an ordinary hazard insurance policy. Consequently, Ms. Weese's escrow account reflected a substantial shortfall to cover

Ocwen's protective advances.  As Ms. Johnson explained, Ocwen agreed to permit Ms. Weese to get caught up with respect to the escrow shortfall by making payments toward that shortfall each month.  Therefore, the Notice of Default which simply reflected the payment "catch-up" portion of the escrow rather than the entire balance of the escrow, necessarily recites a substantially smaller "total due" than the itemization on the Proofs of Claim, which includes the entire escrow shortfall.

Similarly, Ocwen's documents reflected varying amounts due, given the timing and posting of payments and the occasional need to reverse payments when Ms. Weese's bank returned her checks, marked "NSF."  So, for example, on the Notice of Default the principal and interest portion of the total due (as of May 19, 2009) was recited as only $2,153.88, when in fact that amount grew in a matter of days because Ocwen properly reversed a provisional credit upon learning that another check from Ms. Weese had bounced.

The court is satisfied that the principal and interest portion of the arrearage itemization reflected on the Proposed Amended Proof of Claim is accurate and includes six months of missed payments.  Similarly, the court is satisfied that each of the constituents of the itemization of Ms. Weese's  arrearage, save for the late charges, is supported and therefore will be allowed.

B.  Ocwen's Late Fees

The magnitude of the late charges caught the attention of the Debtor and the court. Through its Proposed Amended Proof of Claim, Ocwen seeks to recover late charges in the amount of $7,676.84.

From the argument at the hearing, it appears that the Debtor's most ardent objection to Ocwen's claim is that Ocwen charged a late fee each month, for many months after Ms. Weese

fell behind in making payments.  The court's review of Exhibit D establishes that Ocwen or its predecessor assessed late fees of $107.69 in each instance of a late payment.

The controversy with respect to late fees stems from different views that the Debtor and Ocwen held, not as to the amount of each individual late fee, but as to the proper application of Ms. Weese's frequently late payments, and whether the Debtor should incur a late fee for each month after she had fallen behind.

Under the promissory note (included within Exhibit H),[3] each monthly payment is due on the twentieth of the month, and the Debtor has a fifteen day grace period.  To illustrate, if the Debtor missed her January 20, 2009 payment, Ocwen would assess a late fee of $107.69 on February 4, 2009, at the conclusion of the Debtor's grace period.  If the Debtor thereafter made a timely payment for her February 2009 installment, Ocwen would apply that February payment to the Debtor's payment obligation for January. Significantly, therefore, unless the Debtor made two payments in February, Ocwen would impose a late charge on account of the delinquent *February* payment, 16 days after the February 20, 2009 payment date.  In other words, because of the manner in which Ocwen applied the Debtor's payments, the Debtor was perpetually behind and, in Ocwen's opinion, Ocwen was entitled to assess a late fee. This accounts for the daunting late fees -- fees that exceed the arrearage allocable to principal and interest.

The court has reviewed Exhibit H, including the Debtor's promissory note and its mortgage. Neither document sheds much little light on the lender's authority to apply payments, though the third section of the mortgage comes closest. Although the note precisely prescribes the amount of each individual late fee, it is silent with respect to the application of delinquent

---

[3] Debtor's counsel argued, based on the note included as part of Exhibit H, that the late fee language was ambiguous.

payments.  Under the circumstances, the court must consult the applicable law governing payment application, in this case the law of Michigan.

In Michigan, if a debtor fails to direct how payment is to be applied, her creditor has discretion to determine the application of the payment, and may decide to apply payment to satisfy the oldest debt first. *In re Corradini*, 276 B.R. 571 (Bankr. W.D. Mich. 2002) (canvassing state law); *In re Goehring*, 23 B.R. 323 (Bankr. W. D. Mich. 1982) (same).  The Michigan Supreme Court has explained:

> [A] debtor may direct application of a payment before or at the time it is made, but, if he does not do so, the creditor may apply it as he pleases either at the time of payment or afterwards, if before controversy arises concerning it; and in the absence of such action by either debtor or creditor, if the credit merely appears in the general account and there is no evidence of any understanding to the contrary, the credit will be considered as applied to debits in the order of time in which the debits occurred. . . .

*People ex rel. Michigan Electric Supply Co. v. Vandenburg Electric Co.*, 343 Mich. 87, 72 N.W.2d 216, 218 (1955); *see also In re Noble Intern., Ltd.*, 424 B.R. 760 (E.D. Mich. 2010). Here, because there was no evidence that Ms. Weese gave any direction to Ocwen regarding application of payments, Ocwen was within its rights to apply Ms. Weese's delinquent payments to the earlier installments, even though this had the effect of keeping her perpetually in default and vulnerable to late fees.  The result, though perhaps unpalatable given the magnitude of the late fees, is consistent with applicable law.

However, it appears that the amount allocable to late charges on Ocwen's Proposed Amended Proof of Claim (Claim No. 15) exceeds the late charges itemized on Exhibit D (Detail of Late Fees).  The court accepts the itemization on Exhibit D, and approves late fees in the amount of $7,030.70.

### III. CONCLUSION AND ORDER

In view of the testimony and exhibits offered at the hearing in this matter, the court concludes that Ocwen has an arrearage claim in the amount of $32,640.96, comprised of:

| | |
|---|---|
| Monthly payments | $6,461.64 |
| Late charges | $7,030.70 |
| Insufficient funds charges (NSF) | $716.52 |
| Escrow advances | $15,900.51 |
| Fees, costs and property preservation expenses | $2,703.43 |
| Miscellaneous suspense credit | ($171.84) |
| TOTAL | $32,640.96 |

The court's review of the evidence in this matter strongly suggests that Ms. Weese was not able to afford the costs of her home for many years, fell behind at least as early as 2006, and never really caught up. It appears to the court that not only was she unable to make the payments of principal and interest, but she was also unable to obtain adequate insurance coverage and pay taxes allocable to the collateral. In the court's experience, many debtors naturally undertake Herculean efforts to save their homes, when in fact surrendering their homes may be in their best interest.

The strongly encourages Ms. Weese to consider whether, in fact, she can afford her home. The Bankruptcy Code undeniably provides many benefits, but it does nothing to increase a debtor's income.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection (DN 42) is OVERRULED in large part, and Ocwen's arrearage for purposes of this proceeding shall be $32,640.96.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Rule 9022 and LBR 5005-4 upon Ocwen Loan Servicing, LLC, Jason R. Canvasser, Esq., Marina L. Weese, Patrick S. Fragel, Esq., Elizabeth Clark, Esq., and Michelle M. Wilson, Esq.

END OF ORDER

**IT IS SO ORDERED.**        _____
Scott W. Dales
United States Bankruptcy Judge

**Dated: April 28, 2010**